**CORRECTED OPINION**

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARY A. SLOOP,
<u>Plaintiff-Appellant,</u>

v.

No. 98-2610

MEMORIAL MISSION HOSPITAL,
INCORPORATED, a North Carolina
nonprofit corporation,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Max O. Cogburn, Magistrate Judge.
(CA-97-160-1-C)

Argued: October 27, 1999

Decided: December 15, 1999

Corrected Opinion Filed: January 7, 2000

Before LUTTIG, WILLIAMS, and KING, Circuit Judges.

_____

Vacated and dismissed by published opinion. Judge Luttig wrote the
opinion, in which Judge Williams and Judge King joined.

_____

CORRECTIONS MADE IN REFERENCES TO THE EEOC

_____

**COUNSEL**

**ARGUED:** Allan Paul Root, ROOT & ROOT, Weaverville, North Carolina, for Appellant. Richard Samuel Daniels, PATLA, STRAUS, ROBINSON & MOORE, Asheville, North Carolina, for Appellee. **ON BRIEF:** John Richard Sutton, Sr., SUTTON & EDMUNDS, Candler, North Carolina, for Appellant.

_____

**OPINION**

LUTTIG, Circuit Judge:

Appellant Mary Sloop appeals from the district court's grant of summary judgment to her former employer, appellee Mission Memorial Hospital, Inc. ("Hospital"), which resulted in the dismissal with prejudice of her claim that her discharge by the Hospital constituted an unfair employment practice under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. The district court held that, even assuming that all of Sloop's allegations were true, the activity in which she was engaged was not protected under Title VII. Because we conclude that Sloop's Title VII claim was not included in her charge to the Equal Employment Opportunity Commission (EEOC), we dismiss this case for failure to exhaust administrative remedies, and vacate the judgment on the merits below.

I.

Mary Sloop attended a sexual harassment seminar held by the Hospital on November 7, 1996. At the seminar, several participants voiced concerns about the Hospital's approach to sexual harassment issues. Sloop's remarks concerned the Hospital's treatment of accused harassers. She felt that a Hospital policy specifying procedures that could protect accused harassers was not being implemented, thus creating a hostile environment wherein one employee could damage another's career merely by raising a harassment charge against him.

Apparently, the tenor of the seminar bothered many participants. The Hospital launched an investigation, as a result of which Sloop

2

was terminated on November 14, 1996. The Hospital's proffered reason for the termination was that Sloop acted in a hostile and abusive manner during the seminar.

The next day, Sloop filed a charge with the EEOC, claiming that her termination constituted age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C.§§ 621-634. By January 27, 1997, she had apparently decided that she was fired, at least in part, in retaliation for her comments at the seminar. On that date, she wrote to the EEOC to inquire as to how she should go about adding this retaliation claim to her initial charge. Sloop took no further action with regard to raising her retaliation claim before the EEOC.

After the EEOC dismissed Sloop's claim and issued a right-to-sue letter, she filed suit in the district court, alleging that she was unlawfully terminated in retaliation for conduct protected under Title VII, rather than the ADEA. On August 28, 1998, the district court granted summary judgment in favor of the Hospital, finding that the activity that Sloop alleged was the basis for the Hospital's decision to terminate her was not protected under Title VII.

II.

It is axiomatic that a claimant under Title VII must exhaust his administrative remedies by raising his claim before the EEOC. See Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) ("Where . . . claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred."). This requirement is variously referred to as a jurisdictional prerequisite to adjudication in the federal courts, a procedural prerequisite to bringing suit, and a requirement that a claimant exhaust administrative remedies. Though the Hospital argued below that summary judgment should be granted in its favor because Sloop failed to meet this requirement, the district court made no mention of this argument in its summary judgment order, ruling instead on the merits of Sloop's Title VII argument.[1]

_____

[1] The district court did reject an earlier motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) based on Sloop's failure to exhaust,

3

In the present case, it is indisputable that Sloop's EEOC charge failed to raise a retaliation claim or, for that matter, to make any reference to Title VII. The one sentence in Sloop's charge that alleges unlawful activity against the Hospital reads, "I believe that I was discharged because of my age (52) in violation of the Age Discrimination in Employment Act as amended." J.A. 105. In addition, in the section of the form in which Sloop was required to check a box next to each unlawful basis on which she believed she was discriminated against, she checked only "AGE," leaving blank the boxes next to each of the Title VII prohibited classifications. See id.

Sloop nevertheless asserts that she properly brought her Title VII retaliation claim before the EEOC. In support of this argument, she relies on the sole mention of a retaliation claim in her EEOC file -- a letter, from Sloop to the EEOC, written more than two months after her initial charge had been filed. In that letter, Sloop stated, "I am now aware that I need to add a charge of retaliation to my complaint." J.A. 145. Even if we were to read this sentence as having effectuated an amendment to Sloop's initial charge, there is nothing in the sentence, or in the letter as a whole, to suggest that Sloop wanted to raise a Title VII retaliation argument, as opposed to an ADEA claim. In fact, Sloop reiterated in the letter her view that "the real reason for [her] dismissal" was her age. Id. Moreover, Sloop took no action to amend her charge subsequent to sending the letter, and it is evident from the letter itself that Sloop did not believe she had done so by sending the letter: the sentence following the one quoted above reads, "Please let me know what I need to do in order to do this." Id. Even if Sloop had subjectively believed she had amended her charge by sending the letter, it would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on

_____

noting both the limited burden on Sloop in opposing a motion to dismiss and the possibility that the retaliation claim grew out of the investigation of the claims in the EEOC charge. The court also emphasized that, at that stage in the proceedings, it did not yet have before it a copy of the charge, making impossible a determination whether the retaliation claim exceeded the charge's scope.

4

notice of the claims raised against it. See Dickey v. Greene, 710 F.2d 1003, 1005 (4th Cir. 1983).**2**

We therefore conclude that Sloop's letter did not operate to rectify the deficiency in her initial EEOC charge.

For the reasons stated herein, we conclude that Sloop failed to exhaust her administrative remedies before the EEOC, and therefore dismiss her Title VII retaliation claim. We thus do not consider the merits of that claim, and vacate the judgment on the merits of Sloop's claim below.

VACATED AND DISMISSED
_____

**2** At oral argument, counsel for Sloop asserted for the first time before this court that the retaliation claim raised in the letter should be viewed as naturally having arisen in the course of the EEOC's investigation. However, there is nothing in Sloop's EEOC file to suggest that the EEOC actually investigated the claim, and Sloop can provide no rationale whereby the EEOC would naturally have considered a Title VII retaliation claim in the course of investigating a claim of age discrimination.

5