PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LINDA JONES, an Individual,

   *Plaintiff-Appellant,*

v.

CALVERT GROUP, LIMITED,

   *Defendant-Appellee.*

No. 07-1680

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(8:06-cv-02892-DKC)

Argued: October 30, 2008

Decided: January 5, 2009

Before TRAXLER and SHEDD, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

---

Vacated in part and reversed and remanded in part by published opinion. Judge Traxler wrote the opinion, in which Judge Shedd and Senior Judge Hamilton joined.

---

## COUNSEL

Theodore Scot Allison, Washington, D.C., for Appellant. Henry Adam Platt, SAUL EWING, L.L.P., Washington, D.C., for Appellee.

**OPINION**

TRAXLER, Circuit Judge:

Linda Jones appeals a district court order that, as is relevant here, granted summary judgment against her on her claims that Calvert Group, Ltd. terminated her in retaliation for filing an Equal Employment Opportunity Commission ("EEOC") charge and because of her age, sex, and race. We vacate the judgment on the merits on each of these claims. Regarding the age, sex, and race claims, we remand for dismissal of the claims for lack of subject matter jurisdiction because of Jones's failure to exhaust administrative remedies. With regard to the retaliation claim, we remand for further proceedings.

I.

Because this is an appeal from the grant of summary judgment to Calvert, we review the facts in the light most favorable to Jones. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Jones is an African-American female who was 56 years old when she filed her complaint on November 3, 2006. She was employed by Calvert as a computer operator and technical analyst from 1989 until her termination. She "performed her job successfully at all times." J.A. 5.

On approximately May 1, 2003, Jones filed a complaint of race, age, and sex discrimination with the Maryland Commission on Human Relations ("the first charge") alleging that Calvert had discriminated against her on the basis of her race, sex, and age when it selected a white male under the age of 40 instead of her for a particular position for which she was qualified. The complaint was resolved in February 2004 by a written agreement, under which Calvert was obligated to pro-

vide Jones with certain training and assistance to enable her to qualify for future promotions.

Shortly thereafter, Jones received her first ever negative performance evaluation. She then filed a second formal discrimination charge ("the second charge") claiming that, in retaliation for her filing the first charge, she had been denied mentoring opportunities, management had scrutinized her performance unduly, and she had received a negative performance review. She alleged, "I believe I am being forced to work in a hostile environment and subjected to differential treatment in retaliation for filing" the first charge. J.A. 18. The second charge was before the Maryland Commission on Human Relations from July 6, 2005, until July 10, 2006. Then, on August 6, 2006, the Commission issued Jones a right-to-sue letter.

Calvert terminated Jones on or about October 19, 2006, allegedly for "not taking 'ownership' of her work assignments." J.A. 6.

On November 3, 2006, Jones filed suit in federal district court alleging that she was terminated in violation of Title VII because of her race and sex and in retaliation for engaging in protected Title VII activity, and that she was terminated on the basis of her age in violation of the Age Discrimination in Employment Act ("ADEA"). The suit also alleged that Jones's termination constituted a breach of her employment contract with Calvert.

Calvert moved to dismiss the complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). As is relevant here, Calvert maintained that Jones had failed to exhaust her administrative remedies for the Title VII and ADEA claims. Jones opposed the motion. Converting the motion to one for summary judgment regarding the federal claims, *see* Fed. R. Civ. P. 12(b), the district court entered judgment against Jones on

the Title VII and ADEA counts and dismissed her breach of contract claim for failure to state a claim.[1]

## II.

Title VII of the Civil Rights Act of 1964 makes it an "unlawful employment practice" to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1) (West 2003). The ADEA makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C.A. § 623(a)(1) (West 1999).

Before a plaintiff may file suit under Title VII or the ADEA, he is required to file a charge of discrimination with the EEOC. *See* 42 U.S.C.A. § 2000e-5(f)(1) (West 2003) (Title VII); 29 U.S.C.A. § 626(d) (West 1999) (ADEA). Title VII establishes two possible limitation periods for filing a discrimination charge with the EEOC. *See* 42 U.S.C.A. § 2000e-5(e)(1). "The basic limitations period is 180 days after the alleged unlawful employment practice. However, the limitations period is extended to 300 days when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998). The same limitation periods apply regarding ADEA claims. *See* 29 U.S.C.A. § 626(d). The 300-day period applies in this case.

The charge must be in writing and verified under oath or affirmation under penalty of perjury. *See Edelman v. Lynchburg College*, 535 U.S. 106, 112 (2002). A charge is sufficient "only if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (quoting 29 C.F.R. § 1601.12(b) (2004)). The scope of

---

[1]We note that Jones seeks no relief from this court regarding the dismissal of her breach of contract cause of action.

the plaintiff's right to file a federal lawsuit is determined by the charge's contents. *See Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex. *See id.*; *Bryant*, 288 F.3d at 132-33.

Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim. *See Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 138-40 (4th Cir. 1995) (holding that removal of Title VII action was improper because plaintiff's failure to exhaust administrative remedies deprived the federal courts of subject matter jurisdiction).[2] The same is true of claims made under the ADEA. *See* 29 U.S.C.A. § 626(d); *Vance v. Whirlpool Corp.*, 707 F.2d 483, 486-89 (4th Cir. 1983) (holding that plaintiff's failure to wait 60 days after filing federal administrative charge before bringing suit in federal district court deprived district court of subject matter jurisdiction).

## A.

Jones first contends that the district court erred in ruling that because the second charge did not allege discrimination on the basis of age, sex, or race, she failed to exhaust her administrative remedies for those claims. We disagree.

---

[2]*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), is not to the contrary. In *Zipes*, the Court held only that the *untimeliness* of an administrative charge does not affect federal jurisdiction over a Title VII claim, *see Zipes*, 455 U.S. at 393, and *Davis* noted that the holding in *Zipes* was so limited, *see Davis*, 48 F.3d at 140.

The second charge alleged that Jones was being retaliated against because she had filed the first charge; it did not allege that she was discriminated against based on her age, sex, or race. Indeed, she checked only the "retaliation" box on her EEOC charge and left unchecked the boxes for "age," "sex," or "race." The district court therefore properly determined that Jones failed to exhaust her administrative remedies with regard to those claims. *See Evans*, 80 F.3d at 963.

Jones nevertheless maintains that even if she failed to exhaust her administrative remedies regarding these claims, the district court erred in entering judgment against her on the merits. On this point we agree with Jones. Because Jones's failure to exhaust administrative remedies deprived the district court of subject matter jurisdiction over the claims, "the only function remaining to the court [wa]s that of announcing the fact and dismissing the cause[s]." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Thus, the district court had no authority to award judgment on the merits. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1191 (2007); *see also Vance*, 707 F.2d at 489. Accordingly, we vacate the judgment against Jones on those claims and remand to the district court to dismiss them for lack of subject matter jurisdiction.

B.

Jones next contends that the district court erred in ruling that she failed to exhaust her administrative remedies with regard to the retaliation claim. We agree.

Jones specifically argues that the district court's ruling is at odds with our decision in *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992). In *Nealon*, a public sector Title VII case, the plaintiff filed an EEOC charge alleging that the U.S. Army had violated her rights under the Equal Pay Act of 1963 and Title VII, by paying her less than it paid a man who performed a similar job. After the EEOC made a finding of no reasonable

cause, the plaintiff filed a complaint in federal court alleging Equal Pay Act and Title VII violations and alleging, for the first time, that she was retaliated against in violation of Title VII for filing the earlier EEOC charge.[3] On appeal from the district court's dismissal of the retaliation claim for failure to exhaust administrative remedies, we explained that our circuit had previously left open the question of "whether a plaintiff asserting a Title VII claim of retaliation for filing a previous EEOC charge must exhaust administrative remedies before suing in federal court." *See Nealon*, 958 F.2d at 590 (citing *Aronberg v. Walters*, 755 F.2d 1114, 1115 n.1 (4th Cir. 1985)). Noting that "[a]ll other circuits that have considered the issue have determined that a plaintiff may raise the retaliation claim for the first time in federal court," and "find[ing] these rationales persuasive," we "adopt[ed] th[at] position." *Id.* Justifying our adoption of the rule, we explained that it "is the inevitable corollary of our generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." *Id.* (internal quotation marks omitted). We reasoned that a claim of "retaliation for the filing of an EEOC charge as discrimination" is indeed "like or reasonably related to and growing out of such allegations." *Id.* (internal quotation marks & alteration omitted). And, we noted that "practical concerns" also supported the rule in that a plaintiff that has already been retaliated against one time for filing an EEOC charge will naturally be reluctant to file a separate charge, possibly bringing about further retaliation. *See id.*

Addressing the facts of the case, we reasoned that the EEOC charge that the plaintiff alleged prompted the retaliatory discrimination had been submitted in good faith, and that because conciliation with the Army had not improved her

---

[3]The *Nealon* opinion is silent regarding the nature and timing of the retaliation.

position following the first EEOC charge, it would not have been likely to do so had she filed a second charge. *See id.* Thus, we held she was entitled to have her retaliation claim considered by the district court. *See id.*

Calvert contends that the *Nealon* rule applies only to cases in which the alleged retaliatory act occurred during the pendency of the administrative investigation of the prior EEOC charge. Calvert maintains that unless that is the case, we would have been wrong when we explained in *Nealon* that the rule we were adopting was the "inevitable corollary" of the rule that "the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." Calvert also maintains if Jones were allowed to proceed with her retaliation claim in federal court without first filing a new EEOC charge, Calvert would be denied the opportunity to explain its action to the EEOC or to seek conciliation and Jones would avoid being "subjected to the requirement that she be 'serious enough and sure enough to support [her allegations] by oath subject to liability for perjury.'" Br. of Appellee, at 31 (quoting *Edelman*, 535 U.S. at 113 (alteration in brief)).

We are not persuaded, however. Regardless of whether Calvert presents persuasive arguments that the rule we adopted in *Nealon should* have included a pendency requirement, the language of the opinion is clear that the rule we actually adopted in fact included no such requirement. Nor would such a requirement have fit within our reasoning in that case, in which we explained that a plaintiff should be excused from exhausting claims alleging retaliation for the filing of a previous EEOC charge largely because such a plaintiff would be expected to be gun shy about incurring further retaliation after an additional EEOC charge and because a second conciliation could not be expected to be any more fruitful than the first. *See Nealon*, 958 F.3d at 590. Indeed, *Gottlieb v. Tulane University of Louisiana*, 809 F.2d 278 (5th Cir. 1987), on

which we relied in *Nealon*, involved a retaliation claim that arose after the pendency of the EEOC charge. *See Gottlieb*, 809 F.2d at 280 (noting that alleged retaliation occurred after Title VII action had been filed); *see also Clockedile v. New Hampshire Dep't of Corr.*, 245 F.3d 1, 6 (1st Cir. 2001) (holding that retaliation claim arising after issuance of right-to-sue letter does not require filing of new charge "so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency"); *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 168-69 (11th Cir. 1988) (holding that claim that plaintiff was retaliated against for filing Title VII lawsuit could be litigated in federal court without new EEOC charge).

Calvert further maintains that even if our precedent *at one time* allowed a claim to relate back to an EEOC charge even when the claim arose after the charge was no longer pending, that precedent has been overruled, at least as it applies to discrete unlawful employment acts, by *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), and its progeny. In *Morgan*, a plaintiff sued Amtrak, alleging that he had been subjected to discrete acts and suffered a racially hostile work environment throughout his employment. The issue in *Morgan* was whether the plaintiff was legally barred from recovering for discrete acts that preceded the EEOC charge by more than 300 days, but that were related to the facts alleged in a timely filed charge. *See Morgan*, 536 U.S. at 106. The Court concluded that he was. The Court noted that Title VII explicitly provides that a "charge under this section [42 U.S.C. § 2000e-5] *shall be filed* within one hundred and eighty days [or 300 days when applicable] *after the alleged unlawful employment practice occurred.*" *Id.* at 109 (quoting 42 U.S.C.A. § 2000e-5(e)(1)) (emphasis in opinion). The Court determined that a discrete unlawful employment action, such as termination, "occur[s]" on the day it takes place, regardless of whether it is related to subsequent events that are alleged in a timely EEOC charge. *See Morgan*, 536 U.S. 110-13. The Court therefore held that "discrete discriminatory

acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113; *see also Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2169 (2007).

Although Calvert asserts that *Morgan* required Jones to file a new EEOC charge alleging that she was terminated in retaliation for her first charge, we do not read *Morgan* that broadly. *Morgan* addresses only the issue of when the limitations clock for filing an EEOC charge begins ticking with regard to discrete unlawful employment practices. In this respect, it concerns only Congress's clear preference as expressed in Title VII for "prompt processing of all charges of employment discrimination." *Morgan*, 536 U.S. at 109. It does not purport to address the extent to which an EEOC charge satisfies exhaustion requirements for claims of related, post-charge events. *See Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 673-75 (8th Cir. 2006). *But see Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (holding that after *Morgan* claims of discrete employment actions are not exhausted by virtue of earlier EEOC charge even when the claim is reasonably related to the EEOC charge). *Nealon* therefore remains binding precedent. *See Etheridge v. Norfolk & W. Ry. Co.*, 9 F.3d 1087, 1090 (4th Cir. 1993) (explaining that prior panel's decision binds subsequent panel absent a superseding contrary Supreme Court decision or an en banc decision of this court overruling it).

Having concluded that the rule in *Nealon* contains no pendency requirement and that it has not been overruled, we are still left with the question of how it applies in this case. *Nealon* certainly tells us that Jones's retaliation claim relates back to the *first* EEOC charge. *See Nealon*, 958 F.3d at 590; *see also Brown v. Hartshorne Public Sch. Dist. No. 1*, 864 F.2d 680, 682 (10th Cir. 1988) ("[A]n act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to *that complaint*, obviating the need for a second EEOC complaint." (emphasis added)). But the first

charge did not give rise to any formal litigation and is not before us. Thus, even to the extent that the retaliation claim relates back to the first charge, that does not authorize us to consider the claim. *See Franceschi v. U.S. Dep't of Veterans Affairs*, 514 F.3d 81, 86-87 (1st Cir. 2008) (holding that even though claim that plaintiff was retaliated against for filing an EEOC charge related back to that charge, claim was not properly exhausted because EEOC charge was not properly before the court) (collecting cases).

The critical question therefore is whether Jones's retaliation claim relates back to the charge that is properly before us, the second charge. We conclude that it does. Jones's second charge alleged a pattern of conduct by her employer in retaliation for her filing the first charge that included denying her mentoring opportunities, unduly scrutinizing her performance, and giving her a negative performance review. The charge also indicated that the retaliatory behavior was ongoing. *See* J.A. 18 ("I *am being* forced to work in a hostile environment and subjected to differential treatment in retaliation for filing [the earlier EEOC charge]." (emphasis added)). Particularly in light of the indication in the second charge that Calvert's retaliatory conduct was continuing, we conclude that the alleged retaliatory termination was merely the predictable culmination of Calvert's alleged retaliatory conduct, and, accordingly, we conclude that the claim of retaliatory termination was reasonably related to the allegations of the second charge. *Cf. Smith v. First Union Nat'l Bank*, 202 F.3d 234, 248 (4th Cir. 2000) (holding that claim that because plaintiff consulted with counsel regarding alleged harassment, she was forced to work on her alleged harasser's floor and not offered other positions was reasonably related to EEOC charge that she was chastised and threatened with termination based on the same retaliatory motive); *Wedow*, 442 F.3d at 673-75 (holding that EEOC charge served to exhaust retaliation claims arising after the charge was filed when charge alleged ongoing retaliatory denial of work opportunities and opportunities for promotion

and post-charge claims were based on allegations that plaintiff continued to suffer similar retaliatory denials).

Of course, the *nature* of the retaliation alleged in the present case is slightly different from the retaliation alleged in *Nealon*—in *Nealon*, the plaintiff claimed she suffered retaliation for filing the charge before the court, whereas Jones claims she suffered a continuation of the retaliation she alleged in the charge. Nevertheless, we see no reason why that distinction should make any difference; the "practical concerns" that we cited in *Nealon* as justifying excusing the plaintiff from filing an additional EEOC charge apply with equal force when the claimed retaliation is a continuation of the treatment alleged in the charge before the court. *See Clockedile*, 245 F.3d at 5-6. Thus, we hold that the Jones's retaliation claim related back to her second charge and the district court erred in ruling otherwise. We therefore vacate the judgment against Jones on this claim and remand to the district court for further proceedings.

## III.

In sum, we vacate the judgment against Jones on the merits of her age, sex, and race claims and we remand to the district court for dismissal of those claims for lack of subject matter jurisdiction because of Jones's failure to exhaust administrative remedies. For the reasons we have discussed, however, we vacate the judgment against Jones on her retaliation claim and we remand to the district court for further proceedings on that claim.

*VACATED IN PART AND*
*REVERSED AND REMANDED IN PART*