DIAZ, Circuit Judge, concurring in part and dissenting in part:
After Evangeline Parker gained six promotions in just over a year, reaching a post few women at her company had ever occupied, a false rumor started that she owed her rise not to hard work and skill, but to a sexual affair. Adding injury to this insult, Parker's supervisor then disciplined her more harshly than the male coworker who spread the rumor and treated her less respectfully than the male manager she supposedly slept with. These facts in combination-the spreading of a rumor rooted in base stereotypes about female professionals, plus Parker's disparate treatment compared with members of the opposite sex-fairly permit the inference that Parker was treated with less dignity because she is a woman. I am therefore pleased to join the portions of Judge Niemeyer's opinion holding that Parker has alleged harassment based on her sex and reversing the dismissal of Parker's hostile work environment and retaliation claims.
I write separately, however, because I would also reverse the district court's dismissal of Parker's wrongful termination claim. Respectfully, I cannot agree that Parker's failure to mention a "three-strikes" policy in her EEOC paperwork bars her from asserting this claim. The majority's approach to exhaustion, in my view, demands more specificity and foresight from an EEOC claimant than our precedents or good sense require.
In enforcing the requirement that a Title VII plaintiff first file charges with the *307 EEOC, our cases strike a careful balance between Title VII's administrative framework and judicial remedies. See Stewart v. Iancu , 912 F.3d 693, 707 (4th Cir. 2019). On the one hand, we want employers and the EEOC to know about alleged discrimination so that they may, if possible, resolve matters before a slow and expensive lawsuit becomes necessary. Sydnor v. Fairfax County , 681 F.3d 591, 593 (4th Cir. 2012) ; Chacko v. Patuxent Inst. , 429 F.3d 505, 510 (4th Cir. 2005).* Allowing plaintiffs to conjure new claims and allegations in federal court would undermine this congressionally designed system.
Yet we've also been mindful that "laypersons, rather than lawyers," are expected to begin this remedial process. Sydnor , 681 F.3d at 594 (quoting Fed. Express Corp. v. Holowecki , 552 U.S. 389, 402-03, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008) ). Administrative charges typically aren't completed by lawyers. (Parker, for instance, filled hers out herself.) Courts thus "construe them liberally," Chacko , 429 F.3d at 509, lest exhaustion become a "tripwire for hapless plaintiffs" or erect "insurmountable barriers to litigation out of overly technical concerns." Sydnor , 681 F.3d at 594.
Accordingly, an EEOC charge outlines-but does not rigidly fix-the shape of litigation. As long as a plaintiff's claims in her judicial complaint "are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation," she may advance them in court. Id. (quoting Smith v. First Union Nat'l Bank , 202 F.3d 234, 247 (4th Cir. 2000) ). This permissive approach reconciles competing concerns about employer notice, agency administration, and fairness to (often pro se) EEOC claimants. It also, not unimportantly, reflects the EEOC's considered policy that an adequate charge is one precise enough to "identify the parties" and "describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).
Our cases thus tolerate some discrepancy between the EEOC charge and the formal lawsuit. For instance, in Smith , we held that a Title VII complaint was reasonably related to the plaintiff's EEOC charge where the legal claim (retaliatory termination) didn't change though the form of alleged retaliation (threatened termination versus reassignment and withheld job opportunities) varied. 202 F.3d at 248 ; accord Gregory v. Ga. Dep't of Human Res. , 355 F.3d 1277, 1279 (11th Cir. 2004) ("[J]udicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint." (quotation omitted) ). Likewise, in Chisholm v. U.S. Postal Service , we said that an EEOC charge generally alleging discrimination in promotions notified the employer that "the entire promotional system was being challenged," not just aspects specifically noted in the charge. 665 F.2d 482, 491 (4th Cir. 1981). And in Sydnor , we again excused discrepancies between the EEOC document and lawsuit because both "involved the same place of work and the same actor" and "focused on the same type of discrimination." 681 F.3d at 594-96 ; accord Kersting v. Wal-Mart Stores, Inc. , 250 F.3d 1109, 1118 (7th Cir. 2001) ("[T]he EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals ." (citation omitted) ).
We should be similarly accommodating in this case. Although Parker's lawsuit differs from her EEOC charge in mentioning the three-strikes policy, our precedents suggest the two are similar enough to be *308 reasonably related. As in Sydnor , Parker's charge and complaint involve the same place and actors (RCSI, Parker, Moppins, and the rest) and the same type of discrimination (Moppins firing Parker allegedly because of her sex). And as in Smith , Parker's complaint alleges the same type of discrimination as her charge but adds greater detail: the charge alleges a firing based on the rumor and its aftermath, and the complaint says it also involved a disparately enforced three-strikes policy. Both involve the same parties, the same event, and the same type of discrimination.
In contrast, when we have previously dismissed Title VII claims, the plaintiff's EEOC papers "reference[d] different time frames, actors, and discriminatory conduct" than the judicial complaint. Chacko , 429 F.3d at 506. Parker, however, did not allege discrimination based on a different protected trait or assert a different category of unlawful conduct. See Bryant v. Bell Atl. Md., Inc. , 288 F.3d 124, 132-33 (4th Cir. 2002) (no exhaustion where charge mentioned only race discrimination, but lawsuit also alleged discrimination based on sex and skin tone); Jones v. Calvert Grp., Ltd. , 551 F.3d 297, 301 (4th Cir. 2009) (same when complaint alleged unlawful discrimination, but charge mentioned only retaliation). She didn't recast a single gripe about uneven discipline into a full-scale assault on her professional history with her employer. Dennis v. County of Fairfax , 55 F.3d 151, 153, 156 (4th Cir. 1995). Nor did her lawsuit allege a decades-long saga of discriminatory harassment when her EEOC charge described only three specific incidents. Chacko , 429 F.3d at 511.
Instead, Parker's EEOC charge described her termination by RCSI based on sex, and her formal complaint just provides a fuller factual story of how and why it came about. In my view, the charge gave RCSI ample notice that the circumstances of Parker's termination were under scrutiny. Reasonable investigation of that firing would have uncovered the facts alleged in her complaint-including the fact that her firing allegedly involved two written warnings instead of three.
I would therefore let Parker seek judicial relief for her allegedly discriminatory termination. Accordingly, I join all but Part IV of Judge Niemeyer's opinion.

Sydnor was an Americans with Disabilities Act case, but that statute incorporates Title VII's enforcement scheme. See Sydnor , 681 F.3d at 593.